

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL POSTAGE PREPAID, TO ALL COUNSEL Plaintiff
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: _____7.26.13_____

DEPUTY CLERK



FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JUL 26 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP C. BIKLE, | ) Case No. SACV 13-0911-DOC (JPR) |
| Plaintiff, | ) |
| | ) |
| vs. | ) ORDER DISMISSING COMPLAINT WITH |
| | ) PREJUDICE |
| DOE 1-9 et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff filed this civil rights action pro se on June 19, 2013, after having been granted leave to proceed in forma pauperis.  He alleges violations of 42 U.S.C. §§ 1983, 1985(3), and 1986 as well as various state tort-law claims stemming from when he was issued a traffic ticket, appeared in court to fight the ticket, and had various motions he filed either denied or not heard by the state superior court.  (See Compl. at 4-11.)  He names as defendants "Traffic Supervisor Martha," Commissioner Michael Pearce, Judge Deborah Sanchez, the Superior Court of the State of California at Bellflower, and unnamed employees of the superior court Does 1-9.  Plaintiff seeks injunctive relief "to halt all systemic acts of denial of due process against members

1

1 | of the public," compensatory damages, and punitive damages.
2 | (Compl. at 36-37.)

3 |     After screening the Complaint under 28 U.S.C. § 1915(e)(2)
4 | prior to ordering service, the Court finds that it is frivolous
5 | and fails to state civil rights violations upon which relief
6 | might be granted. Because it is clear that none of the
7 | deficiencies of the Complaint are capable of being cured by
8 | amendment, it is dismissed without leave to amend. See Cook,
9 | Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d
10 | 242, 247 (9th Cir. 1990) (per curiam); cf. Lopez v. Smith, 203
11 | F.3d 1122, 1130-31 (9th Cir. 2000) (en banc) (holding that pro se
12 | litigant must be given leave to amend complaint unless absolutely
13 | clear deficiencies cannot be cured by amendment).

14 | **STANDARD OF REVIEW**

15 |     The Court's screening of a complaint under 28 U.S.C.
16 | § 1915(e)(2) is governed by the following standards. A complaint
17 | may be dismissed as a matter of law for failure to state a claim
18 | "where there is no cognizable legal theory or an absence of
19 | sufficient facts alleged to support a cognizable legal theory."
20 | Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035,
21 | 1041 (9th Cir. 2010); O'Neal v. Price, 531 F.3d 1146, 1151 (9th
22 | Cir. 2008). In considering whether a complaint states a claim, a
23 | court must accept as true all the factual allegations in it.
24 | Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173
25 | L. Ed. 2d 868 (2009); Hamilton v. Brown, 630 F.3d 889, 892-93
26 | (9th Cir. 2011). The court need not accept as true, however,
27 | "allegations that are merely conclusory, unwarranted deductions
28 | of fact, or unreasonable inferences." In re Gilead Scis. Sec.

1  Litig., 536 F.3d 1049, 1055 (9th Cir. 2008); see also Shelton v.
2  Chorley, 487 F. App'x 388, 389 (9th Cir. 2012).  The court also
3  need not accept allegations that are "fantastic or delusional,"
4  "fanciful," or "rise to the level of the irrational or wholly
5  incredible."  Denton v. Hernandez, 504 U.S. 25, 32-33, 112 S. Ct.
6  1728, 1733, 118 L. Ed. 2d 340 (1992).  Although a complaint need
7  not include detailed factual allegations, it "must contain
8  sufficient factual matter, accepted as true, to 'state a claim to
9  relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678
10 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.
11 Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).  A claim is facially
12 plausible when it "allows the court to draw the reasonable
13 inference that the defendant is liable for the misconduct
14 alleged."  Iqbal, 556 U.S. at 678.  "A document filed pro se is
15 to be liberally construed, and a pro se complaint, however
16 inartfully pleaded, must be held to less stringent standards than
17 formal pleadings drafted by lawyers."  Erickson v. Pardus, 551
18 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)
19 (internal quotation marks and citations omitted).

20      Moreover, pursuant to Federal Rule of Civil Procedure
21 12(h)(3), the Court must dismiss an action "[i]f the court
22 determines at any time that it lacks subject-matter jurisdiction
23 . . . ."  See also Fed. R. Civ. P. 12(b)(1) (providing that
24 complaint may be dismissed for lack of subject-matter
25 jurisdiction).  Federal courts lack subject-matter jurisdiction
26 to consider complaints that are "patently insubstantial" or
27 frivolous.  See Neitzke v. Williams, 490 U.S. 319, 327 n.6, 109
28 S. Ct. 1827, 1832 n.6, 104 L. Ed. 2d 338 (1989); see also

1  Franklin v. Murphy, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984)

2  (noting that a "complaint that is obviously frivolous does not

3  confer federal subject matter jurisdiction . . . and may be

4  dismissed sua sponte" (citation and internal quotation marks

5  omitted)); Hagans v. Lavine, 415 U.S. 528, 537-38, 94 S. Ct.

6  1372, 1379, 39 L. Ed. 2d 577 (1974) (a federal claim so

7  insubstantial as to be patently without merit cannot serve as

8  basis for federal jurisdiction).  A frivolous complaint is one

9  that "'lacks an arguable basis in either law or in fact.'"

10 Martin v. Sias, 88 F.3d 774, 775 (9th Cir. 1996) (quoting

11 Neitzke, 490 U.S. at 325).

12                    **ALLEGATIONS OF THE COMPLAINT**

13      Plaintiff alleges that sometime between January 1 and

14 February 7, 2012, "Court employee Doe1" filed a notice for

15 Plaintiff to appear in traffic court on "a criminal complaint";

16 the notice was signed by "Officer A. Santos, of the Los Angeles

17 Sheriff's Department, at Lakewood Station," who was "not licensed

18 to practice law" and "not authorized, by California law, to

19 initiate criminal prosecution in the name of the People of the

20 State of California."  (Compl. at 4.)  Plaintiff alleges that he

21 thereafter mailed "an informal request for discovery to the

22 District Attorney's office at Bellflower" and filed a "motion to

23 quash for lack of a Verified Complaint" in the superior court.

24 (Id.)  He also filed a "motion to dismiss on the grounds that the

25 Peace Officer and Clerk of Court are practicing law without a

26 license."  (Id.)  Plaintiff noticed his motions for June 6, 2012,

27 at 1 p.m. in Department 001 of the superior court.  (Id.)

28 Unnamed court employees either failed to schedule hearings for

1   Plaintiff's motions or failed to provide him notice of scheduled
2   hearing dates.   (Compl. at 5.)   "On June 1st, 2012 [Plaintiff]
3   attempted to file a peremptory challenge against Commissioner
4   Michael Pearce" but "[a] female court employee, Doe6, refused to
5   file [his] peremptory challenge around 2:20pm."   (Id.)
6   Thereafter,

7           Bikle made an appearance at Bellflower Courthouse on
8       June 6, 2012.  Bikle did not find his name on the list of
9       scheduled appearances posted outside of Department 001.
10      Bikle filed 1 original written peremptory challenge with
11      the Bellflower Courthouse and Bikle kept 1 original
12      written peremptory challenge that had been stamped as
13      received by the court, on June 6, 2012, before the
14      proposed hearing time of 1:00PM, as Bikle did not know if
15      a hearing would be held since two separate Deputy Clerks
16      of Court had specifically told him that they did not have
17      him scheduled for any thing other than an arraignment on
18      August 1, 2012.  Bikle was told by the first Deputy Clerk
19      that he could go into Department 001 but that he would
20      not be heard with out being scheduled.

21          On June 7, 2012 Traffic Supervisor "Martha" issued
22      process in the form of a "correspondence inquiry" to
23      Commissioner Michael Pearce.

24          This correspondence inquiry indicates that the
25      Plaintiff was requesting "motion to quash & hearing for
26      6-6-12".   The correspondence inquiry did not indicate
27      that Plaintiff had provided a stipulation to have his
28      matters heard before Commissioner Pearce.   In addition,

1    there was no mention of Plaintiff's motion to dismiss on
2    the grounds that the Peace Officer and Clerk of Court
3    were practicing law with out a license. Martha indicated
4    that the alleged defendant failed to appear on June 6,
5    2012. The correspondence inquiry also indicates that
6    Commissioner Pearce denied the motion to quash on June 7,
7    2012.

8        Commissioner Pearce was not authorized by law to
9    deny the motion to quash.

10       Pursuant to California State Constitution Article 6
11   Section 21, Commissioner Pearce had not obtained a
12   stipulation from Bikle at the time of his action.
13   (Compl. at 5-6.) Plaintiff goes on to allege that he served
14   several "informal requests for discovery" on the District
15   Attorney's office in Bellflower and later a motion to compel
16   discovery, none of which received a response, and that he filed
17   in the superior court a "petition for a writ of Mandate and a
18   writ of Prohibition," which was "lost" by court staff. (Compl.
19   at 6-7.) Regarding the alleged loss of his motion papers and
20   failure to schedule a hearing on his motions, Petitioner then
21   makes the following allegations:

22       On August 1, 2012, Bikle appeared at Bellflower
23   Courthouse, 1PM, in department 001.

24       At this time, Commissioner Pearce failed to produce
25   the peremptory challenge, described earlier, from the
26   case file.

27       Doe8 did one of the following things to the
28   peremptory challenge, which resulted in Pearce's failure

to produce the filed peremptory challenge: Steal, remove, or secrete; Destroy, mutilate, or deface; Alter or falsify. Bikle does not currently have enough facts to determine which of the listed actions occurred to result in the absence of the peremptory challenge from the case file, but it is clear that one of the actions must have taken place, as the record could not be found.

On August 1, 2012 Bikle appeared at Bellflower Courthouse, in Department 006. This appearance was the result of disqualifying Commissioner Pearce. Before Bikle's case file was transferred from Department 001 Bikle had a discussion with Judge Sanchez, which was not on the record. During this discussion Bikle indicated concern about getting a ruling on the motion to dismiss and that the motion to quash denial was done with out authority. When Bikle's case file arrived Judge Sanchez excused herself so that she could read over it. She came back within 20 minutes, at which point the record started.

Bikle was exhausted due to only getting about 5 hours of sleep the night before as a result of anxiety and pain. Bikle was also in extreme pain at this appearance.

Judge Sanchez immediately asked if Bikle wanted to plead not guilty when the record started.

Judge Sanchez did not rule on the Document #1001 Version 1.001 titled, "Motion to dismiss on the grounds that the Peace Officer and Clerk of Court are practicing

7

law without a license" before jumping ahead to ask for a plea.   Judge Sanchez did not rule on the Document #1001 Version 1.001 during the first, second, third, or fourth appearances of Bikle.

On August 1, 2012 Bikle requested for a [sic] copy of the verified complaint pursuant to California Penal Code 988.

Judge Sanchez gave the non-responsive comment, "The judicial counsel form is an appropriate method to charge you with the vehicle code sections.  So what plea did you want to enter?" and changed the subject by asking what plea I wanted to enter.   Judge Sanchez did not provide Bikle with a copy of the alleged complaint upon my request.

Bikle was exhausted and requested another week to respond.

Judge Sanchez did not dismiss the case on any of the occasions that Bikle raised oral argument regarding the points contained within Document #1001 Version 1.001.

Bikle made numerous attempts to get the case dismissed as there had clearly been no initiation of prosecution by an individual who was authorized to initiate criminal proceedings in the name of the People of the State of California.

(Compl. at 7-8.)   Plaintiff thereafter alleges that he moved to recuse Judge Sanchez, who "attempted to get Bikle to be a witness against himself," and that his "petition for writ of mandamus" was denied, but a clerk at the Stanley Mosk Courthouse in Los

1   Angeles "failed to provide [Plaintiff] with prompt notice of the
2   decision" denying his petition.  (Compl. at 9.)  He alleges that
3   his case was ultimately dismissed, "but none of the proposed
4   orders which Bikle had included with Document #1001 Version 1.001
5   and Document #1013 Version 1.000 were used[,] [b]oth of which
6   indicated that the prosecuting attorney had not initiated
7   prosecution."  (Id.)  Plaintiff asserts that "[a]t no point in
8   time did the record contain evidence of a final agency
9   determination in regards to the contested issue of the right to
10  travel and property use rather than the alleged operation of a
11  motor vehicle," and "[t]he jurisdiction of the court was not
12  invoked, at any time, by an individual authorized to initiate
13  criminal proceedings in the name of the People of the State of
14  California."  (Compl. at 10.)

15       Plaintiff asserts 22 causes of action against unnamed court
16  clerks Does 1-9, "Traffic Supervisor Martha," Commissioner
17  Pearce, Judge Sanchez, and the Bellflower superior court, for
18  violations of his Fifth and 14th amendment rights to due process
19  and equal protection and for conspiracy to deprive him of his
20  constitutional rights under 42 U.S.C. §§ 1985(3) and 1986; he
21  also brings a separate cause of action against all Defendants
22  under "California tort law."  (Compl. at 11-36.)  Plaintiff
23  alleges that Defendants' actions caused him "Physical pain and
24  suffering, including but not limited to exacerbation of
25  preexisting conditions"; "Emotional pain and suffering, including
26  but not limited to stress and anxiety"; "A substantial loss of
27  the enjoyment of life"; "humiliation"; "impairment of
28  relationships"; "Insomnia and nightmares"; "Chronic headaches";

1   and "Development of fears and phobias."   (<u>Id.</u>)

2                              **DISCUSSION**

3       Plaintiff's Complaint is frivolous and fails to state a

4   claim upon which relief may be granted.   Leaving aside

5   Plaintiff's claims that his traffic citation was issued by a

6   police officer (not named as a Defendant in this action) and

7   court clerk "practicing law without a license" (Compl. at 4),[1]

8   the entirety of the Complaint concerns actions taken by judges

9   and other court staff in the course of their judicial duties.

10  Those Defendants are absolutely immune from damages suits for

11  actions taken within their capacity as judges or court employees,

12  and all of Plaintiff's monetary claims against them must

13  therefore be dismissed with prejudice.   See <u>Schucker v. Rockwood</u>,

14  846 F.2d 1202, 1204 (9th Cir. 1988) (per curiam) ("Judges are

15  absolutely immune from damages actions for judicial acts taken

16  within the jurisdiction of their courts."); <u>Mireles v. Waco</u>, 502

17  U.S. 9, 9, 112 S. Ct. 286, 287, 116 L. Ed. 2d 9 (1991) (per

18  curiam) ("A long line of this Court's precedents acknowledges

19

20          [1]     In <u>People v. Stapf</u>, 28 Cal. App. 4th 1756, 34 Cal. Rptr.
21  2d 351 (1994), the California Court of Appeal held that the traffic
    courts' procedure of allowing court clerks to file criminal
22  complaints for failure to appear for traffic offenses did not
    violate   the   California   Constitution's   separation-of-powers
23  doctrine.   The California   Supreme Court later denied review and
    ordered the opinion not officially published. 34 Cal. Rptr. 2d 351
24  (1995).   <u>See also</u> <u>People v. Carlucci</u>, 23 Cal. 3d 249, 590 P.2d 15
25  (1979) (holding that conducting traffic-infraction hearings without
    prosecutor does not deprive traffic-court defendants of due process
26  of   law).     Regardless   of   the   legality   of   the   state's   traffic-
    violation procedures under state law, however, Plaintiff has cited
27  no authority, and the Court has found no authority, suggesting that
28  those procedures violate any federal constitutional requirement.

                                     10

1    that, generally, a judge is immune from a suit for money

2    damages."); <u>Miller v. Barilla</u>, 549 F.2d 648, 648-49 (9th Cir.

3    1977) (affirming district court's dismissal of § 1983 damages

4    suit based on absolute immunity for trial judge, who allegedly

5    sentenced plaintiff in breach of plea bargain), <u>overruled on</u>

6    <u>other grounds by</u> <u>Glover v. Tower</u>, 700 F.2d 556, 559 (9th Cir.

7    1983); <u>see also</u> <u>In re Castillo</u>, 297 F.3d 940, 952 (9th Cir. 2002)

8    (explaining that court clerks enjoy "absolute quasi-judicial

9    immunity . . . for purely administrative acts – acts which taken

10   out of context would appear ministerial, but when viewed in

11   context are actually a part of the judicial function"); <u>Mullis v.</u>

12   <u>U.S. Bankr. Ct.</u>, 828 F.2d 1385, 1390 (9th Cir. 1987) (holding

13   that bankruptcy clerks have absolute quasi-judicial immunity from

14   suit for refusing to accept amended complaint because such

15   actions relate to integral part of judicial process).

16        To the extent Plaintiff asserts that Commissioner Pearce (or

17   any other Defendant) was not authorized to hear his case and thus

18   may have been acting outside his judicial authority (<u>see</u> Compl.

19   at 6), that argument is unavailing.  Judicial immunity is

20   unavailable only when a judge acts in "clear absence of all

21   jurisdiction" or performs an act that is not judicial in nature.

22   <u>See</u> <u>Ashelman v. Pope</u>, 793 F.2d 1072, 1075 (9th Cir. 1986).  For

23   purposes of determining judicial immunity, a clear absence of all

24   jurisdiction means a clear lack of all subject-matter

25   jurisdiction.  <u>See</u> <u>Mullis</u>, 828 F.2d at 1389.  It is immaterial

26   that the judge may otherwise have acted in error or in excess of

27   his authority.  <u>See</u> <u>Stump v. Sparkman</u>, 435 U.S. 349, 356, 98 S.

28   Ct. 1099, 1104, 55 L. Ed. 2d 331 (1978).  Here, the superior

court was authorized by statute to preside over traffic
infractions and misdemeanors. See Cal. Penal Code §§ 19.7,
1462.2.  Plaintiff's traffic infraction and all related
proceedings were therefore within the statutory jurisdiction of
the superior court.  Commissioner Pearce was an officer of the
superior court with full judicial powers and duties relating to
traffic infractions. See Cal. Gov't Code § 72190; see also
Branson v. Martin, 56 Cal. App. 4th 300, 304-05, 65 Cal. Rptr. 2d
401, 403-04 (1997).  Accordingly, his limited conduct in denying
Plaintiff's motion to quash was well within his jurisdiction, and
he is entitled to judicial immunity from Plaintiff's claims.
Even if Commissioner Pearce's ruling was in error or exceeded his
jurisdiction, as the Ninth Circuit has observed, "a mistake or
act in excess of jurisdiction does not abrogate judicial
immunity, even if it results in 'grave procedural errors.'"
Mullis, 828 F.2d at 1390 (quoting Stump, 435 U.S. at 359).  Thus,
Plaintiff is not entitled to money damages from any of the court
employees, as all are judicially immune. See Jackson v. La.
Tech. Univ., Civil Action No. 11-0524, 2011 WL 6749014, at *6-10,
*12 (W.D. La. Nov. 22, 2011) (dismissing with prejudice § 1983
claims against judge for alleged misconduct in failing to set
hearings and denying plaintiff's various requests and motions in
traffic-citation case and against court clerks and court reporter
for failing to file motions and pleadings, failing to set motions
for hearing, and allegedly unlawfully altering hearing
transcripts because challenged actions were judicial or
administrative in nature and defendants therefore absolutely
immune from suit), accepted by 2011 WL 6749044 (W.D. La. Dec. 22,

12

1  2011).

2        Plaintiff also has not demonstrated entitlement to

3  injunctive relief "to halt all systemic acts of denial of due

4  process against members of the public in the County of Los

5  Angeles at the Superior Court of California in Bellflower."

6  (Compl. at 36; see also Compl. at 2.)  Plaintiff cannot seek an

7  injunction on behalf of "members of the public" because pro se

8  litigants have no authority to represent anyone other than

9  themselves.  See Simon v. Hartford Life, Inc., 546 F.3d 661, 664

10  (9th Cir. 2008) ("[T]he privilege to represent oneself pro se

11  provided by [28 U.S.C.] § 1654 is personal to the litigant and

12  does not extend to other parties or entities.").  Moreover,

13  Plaintiff fails to state which alleged constitutional violation

14  justifies injunctive relief, the nature of the injunctive relief

15  sought, or any other facts that would support a finding that

16  injunctive relief is appropriate.  Thus, his claim for injunctive

17  relief must be dismissed.  See Iqbal, 129 S. Ct. at 1949

18  (complaint is insufficient if it "tenders naked assertions devoid

19  of further factual development" (citation, internal quotation

20  marks, and brackets omitted)).

21        Plaintiff also cannot sue the superior court itself because

22  it is not a "person" within the meaning of § 1983; rather, it is

23  an arm of the state and is immune from suit unless the state has

24  expressly waived immunity.  See Simmons v. Sacramento Cnty.

25  Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff

26  cannot state a claim against the Sacramento County Superior Court

27  (or its employees), because such suits are barred by the Eleventh

28  Amendment."); Greater L.A. Council on Deafness, Inc. v. Zolin,

812 F.2d 1103, 1110 (9th Cir. 1987) ("We conclude that a suit against the Superior Court is a suit against the State, barred by the eleventh amendment."). Typically, "[w]aiver of Eleventh Amendment immunity by a state will be found only where stated by the most express language or by such overwhelming implication from the text [of a state statute] as [will] leave no room for any other reasonable construction." Micomonaco v. Washington, 45 F.3d 316, 319 (9th Cir. 1995) (internal quotation marks and citation omitted). There is no evidence that the superior court has waived its 11th Amendment immunity here. See BV Eng'g v. Univ. of Cal., L.A., 858 F.2d 1394, 1396 (9th Cir. 1988) (noting that California has not waived its 11th Amendment immunity to suit in federal court); Peltier-Ochoa v. Miele, No. EDCV 12-0663-JAK (RNB), 2012 WL 4107924, at *1 (C.D. Cal. Aug. 28, 2012) (noting that California has not waived 11th Amendment immunity, nor has "Congress . . . abrogated State sovereign immunity against suits under 42 U.S.C. § 1983"). Accordingly, Plaintiff's claims against the superior court must be dismissed. See Mahaley v. Baker, No. EDCV 12-01461-PSG(OP), 2013 WL 2480683, at *6 (C.D. Cal. June 10, 2013) (dismissing with prejudice § 1983 claim against superior court because superior court is immune from suit under 11th Amendment).

Further, to the extent Plaintiff challenges the superior court's denials of any of his motions, the Court lacks subject-matter jurisdiction to hear such claims. Doing so would contravene the Rooker-Feldman doctrine, derived from two U.S. Supreme Court opinions, which provides that federal district courts may exercise only original jurisdiction; they may not

14

1  exercise appellate jurisdiction over state-court decisions.  See
2  Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462,
3  482-86, 103 S. Ct. 1303, 1315-17, 75 L. Ed. 2d 206 (1983); Rooker
4  v. Fid. Trust Co., 263 U.S. 413, 415-16, 44 S. Ct. 149, 150, 68
5  L. Ed. 362 (1923).  Review of state-court decisions may be
6  conducted only by the U.S. Supreme Court.  See Feldman, 460 U.S.
7  at 476, 486; Rooker, 263 U.S. at 416; see also 28 U.S.C. § 1257.
8  Rooker-Feldman bars "cases brought by state-court losers
9  complaining of injuries caused by state-court judgments rendered
10 before the district court proceedings commenced and inviting
11 district court review and rejection of those judgments." Exxon
12 Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125
13 S. Ct. 1517, 1521-22, 161 L. Ed. 2d 454 (2005).  To the extent
14 Plaintiff asks this Court to review and reverse the state court's
15 decisions denying any of his motions, his § 1983 action is
16 barred.  In any event, the charge against Plaintiff was
17 ultimately dismissed, according to the Complaint.  (Compl. at 9.)
18     Plaintiff also has not pleaded any facts to support a claim
19 under §§ 1985(3) or 1986.  Section 1985(3) prohibits conspiracies
20 to deprive "any person or persons" of equal protection under the
21 laws, equal privileges and immunities under the laws, or the
22 right to vote.  Any party injured as a result of a violation of
23 § 1985 "may have an action for the recovery of damages,
24 occasioned by such injury or deprivation, against any one or more
25 of the conspirators."  42 U.S.C. § 1985(3).
26     To state a claim under § 1985(3), a plaintiff must allege
27 "(1) that some racial, or perhaps otherwise class-based,
28 invidiously discriminatory animus [lay] behind the conspirators'

15

1   action, . . . and (2) that the conspiracy aimed at interfering
2   with rights that are protected against private, as well as
3   official, encroachment." <u>Bray v. Alexandria Women's Health</u>
4   <u>Clinic</u>, 506 U.S. 263, 267-68, 113 S. Ct. 753, 758, 122 L. Ed. 2d
5   34 (1993) (§ 1985(3)) (citations and internal quotations
6   omitted).  "[T]he plaintiff must state specific facts to support
7   the existence of the claimed conspiracy." <u>Olsen v. Idaho State</u>
8   <u>Bd. of Med.</u>, 363 F.3d 916, 929 (9th Cir. 2004) (citation and
9   internal quotations omitted).

10      To state a claim for conspiracy to violate his right to
11  equal protection, Plaintiff must allege facts showing that he was
12  intentionally treated differently from others similarly situated
13  and that there was no rational basis for the difference in
14  treatment. <u>See Village of Willowbrook v. Olech</u>, 528 U.S. 562,
15  564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000); <u>Barren v.</u>
16  <u>Harrington</u>, 152 F.3d 1193, 1194-95 (9th Cir. 1998).  Conclusory
17  allegations will not suffice.  <u>See Iqbal</u>, 129 S. Ct. at 1949;
18  <u>Karim-Panahi v. L.A. Police Dep't</u>, 839 F.2d 621, 626 (9th Cir.
19  1988) (affirming dismissal of § 1985(3) claim containing "legal
20  conclusions but no specification of any facts to support the
21  claim of conspiracy").

22      Plaintiff alleges no facts whatsoever to support any of the
23  above requirements.  Plaintiff's § 1985 claims must therefore be
24  dismissed.

25      Plaintiff's § 1986 claim must also be dismissed.  A claim
26  under § 1986 requires as a prerequisite a violation of § 1985.
27  <u>Trerice v. Pedersen</u>, 769 F.2d 1398, 1403 (9th Cir. 1985).
28  Because Plaintiff has not alleged a valid § 1985 claim, he has

also failed to state a claim under § 1986.

Finally, because Plaintiff's federal claims all must be dismissed, Plaintiff's state-law tort claims must be dismissed as well.  A court may exercise supplemental jurisdiction over a state-law claim if a plaintiff raises a cognizable federal claim that is substantial enough to confer federal jurisdiction and shares a common nucleus of operative fact with the state claim. <u>Brady v. Brown</u>, 51 F.3d 810, 816 (9th Cir. 1995); <u>see</u> 28 U.S.C. § 1367.  If the federal claim is dismissed before trial, the state claim should be dismissed as well.  <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966).  Here, because the Court has dismissed all of Plaintiff's federal claims for failure to state a claim, his state-law tort claims must also be dismissed.

Because Plaintiff's Complaint is frivolous and it is absolutely clear that its deficiencies cannot be cured by amendment, the Court hereby ORDERS that the Complaint is dismissed with prejudice.

DATED: _July 24, 2013_                    _____

                                          DAVID O. CARTER
                                          U.S. DISTRICT JUDGE


Presented by:

_____
Jean Rosenbluth
U.S. Magistrate Judge